IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-497

No. COA20-618

Filed 21 September 2021

Washington County, Nos. 19 CRS 77, 282, 18 CRS 50617

STATE OF NORTH CAROLINA

v.

WILLIS R. CLAGON, Defendant.

Appeal by Defendant from judgments entered 19 November 2019 by Judge
Walter H. Godwin, Jr., in Washington County Superior Court.  Heard in the Court of
Appeals 25 August 2021.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Creecy
> Johnson, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Wyatt
> Orsbon, for Defendant.*

GRIFFIN, Judge.

¶ 1       Willis R. Clagon ("Defendant") appeals from two judgments entered upon a
jury verdict for (1) assault with a deadly weapon inflicting serious injury and (2)
intimidating a witness.[1]  Defendant argues that (1) there was a fatal variance
between the State's proof and its charge of intimidating a witness; (2) the trial court

---

[1] Defendant also filed a petition for writ of certiorari to appeal an order finding him in
criminal contempt.  We deny the petition.

erred by using the phrase "attempted to deter" in its jury instruction for the charge

of intimidating a witness; and (3) the trial court's restitution order was unsupported

by the State's evidence. We discern no error in the first two issues. We vacate and

remand on the issue of restitution.

## I. Factual and Procedural Background

### A. Indictment

On 8 April 2019, Defendant was indicted for (1) assault with a deadly weapon

inflicting serious injury ("AWDWISI") and (2) intimidating a witness. The indictment

for intimidating a witness stated, in pertinent part, that "[t]he intimidation consisted

of [Defendant] telling Darryl Derstine to tell Nicholas Ramos that he would have

Nicholas Ramos deported if he testified against [] Defendant and was for the purpose

of keeping Nicholas Ramos from testifying against [Defendant]."

### B. State's Evidence

Defendant was tried by jury in Washington County Superior Court from 18 to

19 November 2019. The State's evidence tended to show the following:

Larry Brooks and Defendant were employed at Crossties Plus as of 29

November 2018. That day, Mr. Brooks and Defendant had an "altercation." At first,

they only exchanged words, but then Defendant pushed Mr. Brooks, and Mr. Brooks

swung at Defendant in response, without hitting him. Defendant walked away, and

Mr. Brooks went back to work. A few minutes later, Defendant returned with a

machete, which he swung at Mr. Brooks multiple times. The machete blade hit Mr. Brooks' shoulder and left wrist.

¶ 5        Darryl Derstine drove Mr. Brooks to the hospital. Mr. Brooks spent about two hours at the hospital, and then approximately a day and a half at another hospital where he received surgery to repair his severed ligaments. He spent around two months in physical therapy after the incident. He had not regained full use of his left hand when the case was called for trial. Mr. Brooks did not testify as to the monetary amount of his medical expenses, and no evidence in the Record shows the amount.

¶ 6        Nicholas Ramos, another Crossties Plus employee, was working nearby during the alleged assault. Mr. Derstine testified that, "sometime within the next couple of months" after the incident, he had a phone conversation with Defendant concerning Mr. Ramos. Mr. Derstine testified that in the phone call, Defendant

> started talking about that he had told his lawyer . . . that Nick [Ramos] was illegal.
>  . . .
> [Defendant] said he mentioned ICE, like immigration, and implied that they would -- might be coming around and then . . . he said, "I know Nick has a family here, and that's too bad." He said, "I have a family here too, and I'm going to look out for my interest first. I will not have him testify against me."
>
> [PROSECUTOR:] Did he . . . say anything else about having Nick deported?
>
> [MR. DERSTINE:] He never actually said, "I will have Nick deported." He contextualized the conversation in that

context of immigration in that . . . Nick isn't supposed to be here in his mind, and then he said, "It's too bad about his family, but I have a family too. I'm going to look out for my interest first. I will not have him testify against me."

¶ 7    Similarly, a Crossties Plus employee, James Strite, testified that he "knew [that Defendant] said there is an employee here that is, quote, illegal, and I won't have him testifying against me."

¶ 8    Investigator Charles Arnold, who had responded to the call about the incident, testified that he

> had went [sic] back to . . . the sawmill on January 29th and spoke with Mr. Derstine in reference to [Defendant] calling up there several times from jail -- or calling after he was released from jail and saying that he knew -- he knew Nick [Ramos] was here illegally and that it would be a shame if, you know, ICE was called and he was -- you know I took it as be deported.
>
> I asked Mr. Derstine if . . . Nick would be willing to talk to me, and he said, "Nick is very scared of [Defendant]."
> . . .
> It wasn't for a while later that I received a message that Nick would talk.

¶ 9    During cross-examination, Investigator Arnold testified the following:

> [DEFENSE COUNSEL:] And [Nicholas Ramos's] cooperation in this case was not deterred in any way that you can tell.
>
> [INVESTIGATOR ARNOLD:] No, ma'am.

> [DEFENSE COUNSEL:] And to your knowledge
> [Defendant], once he turned himself in, never called ICE or
> any other deportation agency --
>
> [INVESTIGATOR ARNOLD:] No, ma'am.
> . . .
> [DEFENSE COUNSEL:] No letters were seized from
> [Defendant's] jail cell where he said ICE is going to be here,
> and to your knowledge no ICE agent is in this courtroom.
>
> [INVESTIGATOR ARNOLD:] No, ma'am.

Mr. Ramos testified that Mr. Derstine had not told him "about a phone call he had with [Defendant.]"  Additionally, Mr. Ramos denied that he was, "for lack of a better word[,] . . . scared to come here today and have to testify[.]"

C. Jury Instructions

For the charge of intimidating a witness, the trial court proposed giving jury instructions of

> intimidating a witness and the paragraphs within that the
> defendant intimidated by attempting to deter any person
> who was summoned or who was acting as a witness in the
> defendant's case, intimidating means to make timid,
> fearful, or inspire or affect with fear or frighten and that
> the threat consisted of threatening to have authorities to
> deport the witness and then the concluding instructions.

The trial court gave the following jury instructions for the charge of intimidating a witness:

> Now the defendant has been charged with intimidating a
> witness.  For you to find the defendant guilty of this

offense the State must prove four things beyond a reasonable doubt: First, that a person was acting as a witness in a -- in a court of this state; second, that the defendant attempted to deter any person who was acting as a witness in the defendant's case. Intimidating means to make timid or fearful, inspire or affect with fear or frighten; third, that the defendant acted intentionally; and, fourth, that the defendant did so by threatening to have the authorities deport the witness.

So if you find from the evidence beyond a reasonable doubt that on or about the alleged date a person was acting as a witness in the defendant's case in a court of this state and that the defendant intentionally attempted to deter the witness by threatening to have the authorities deport the witness it would be your duty to return a verdict of guilty; however, if you do not so find or if you have a reasonable doubt to one or more of these things, it would be your duty to return a verdict of not guilty.

The parties did not object to the court's proposed jury instruction for the charge of intimidating a witness, either before or after the instructions were given.

During deliberations, the jury asked, "What are the criteria for finding an intimidating a witness verdict?" The trial court brought the jury back in the courtroom and repeated essentially the same instructions for the charge of intimidating a witness.

D. <u>Motions to Dismiss</u>

Defendant moved to dismiss both charges at the close of the State's evidence and at the close of all the evidence. The trial court denied Defendant's motions to dismiss.

E. <u>Sentencing and Appeal</u>

¶ 14    The jury found Defendant guilty of both charges. The trial court sentenced Defendant to 45-66 months for the AWDWISI conviction and 22-36 months for the intimidating a witness conviction. At the State's request, the trial court also awarded $23,189.22 in victim restitution. Defendant timely appealed.

## II.    Analysis

¶ 15    Defendant argues that (1) there was a fatal variance between the State's proof and its charge of intimidating a witness; (2) the trial court erred by using the phrase "attempted to deter" in its jury instruction for the charge of intimidating a witness; and (3) the trial court's restitution order was unsupported by the State's evidence. We disagree that the variance was fatal and that the jury instructions deviated from the agreed-upon pattern instructions. We agree, and the State concedes, that the trial court's restitution order was unsupported by evidence.

A. <u>No Fatal Variance</u>

¶ 16    Defendant argues that there was a fatal variance between the State's proof and its charge of intimidating a witness. Although there was a variance between the evidence and the indictment, the variance was not fatal.

*1. Preservation*

¶ 17    Defendant's motion to dismiss preserved his variance argument for appellate review. Previously, this Court has held that "[t]o preserve the issue of a fatal variance

for review, a defendant must state at trial that a fatal variance is the basis for the motion to dismiss." *State v. Redman*, 224 N.C. App. 363, 367-68, 736 S.E.2d 545, 549 (2012) (citing *State v. Curry*, 203 N.C. App. 375, 384, 692 S.E.2d 129, 137, *appeal dismissed and disc. review denied*, 364 N.C. 437, 702 S.E.2d 496 (2010)). Defendant's motions to dismiss did not specifically articulate a fatal variance argument; the motions were based generally on alleged insufficiencies of evidence. However, our Supreme Court recently clarified that "merely moving to dismiss at the proper time under Rule 10(a)(3) preserves *all* issues related to the sufficiency of the evidence for appellate review." *State v. Golder*, 374 N.C. 238, 249, 839 S.E.2d 782, 790 (2020) (emphasis in original). "[A] variance-based challenge is, essentially, a contention that the evidence is insufficient to support a conviction." *State v. Gayton-Barbosa,* 197 N.C. App. 129, 134, 676 S.E.2d 586, 590 (2009). In accordance with *Golder*, we hold that the issue was preserved. 374 N.C. at 249, 839 S.E.2d at 790.

*2. Standard of Review*

We review *de novo* the issue of a fatal variance. *State v. Cheeks*, 267 N.C. App. 579, 612, 833 S.E.2d 660, 681 (2019), *aff'd*, 377 N.C. 528, 858 S.E.2d 566 (2021).

*3. Analysis*

"A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." *State v. Waddell*, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971). For a variance to

require dismissal, "the defendant must show a fatal variance between the offense charged and the proof as to '[t]he gist of the offense.' This means that the defendant must show a variance regarding an essential element of the offense." *State v. Pickens*, 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997) (quoting *Waddell,* 279 N.C. at 445, 183 S.E.2d at 646) (citing *State v. Williams*, 295 N.C. 655, 663, 249 S.E.2d 709, 715 (1978)). "The purpose for prohibiting a variance between allegations contained in an indictment and evidence established at trial is to enable the defendant to prepare a defense against the crime with which the defendant is charged and to protect the defendant from another prosecution for the same incident." *State v. Taylor*, 203 N.C. App. 448, 455-56, 691 S.E.2d 755, 762 (2010) (citation omitted).

¶ 20        Here, there was a variance between the indictment and the State's evidence for the charge of intimidating a witness. The indictment stated that "[t]he intimidation consisted of [Defendant] telling Darryl Derstine to tell Nicholas Ramos that he would have Nicholas Ramos deported if he testified against the Defendant[.]" No evidence tended to show Defendant expressly told Darryl Derstine to convey the message to Nicholas Ramos. Evidence tended to show Nicholas Ramos did not actually receive the message, i.e., Nicholas Ramos testified that Darryl Derstine did not tell him "about a phone call he had with [Defendant.]"

¶ 21        However, the variance here was not fatal because it did not relate to the "the gist" of the offense. "'The gist' of the offense of intimidating a witness is 'the

obstruction of justice.'" *State v. Neely*, 4 N.C. App. 475, 476, 166 S.E.2d 878, 879 (1969). Whether a witness actually receives the threatening communication in question is "irrelevant" to the crime of intimidating a witness. *State v. Barnett*, 245 N.C. App. 101, 108, 784 S.E.2d 188, 193-94, *rev'd in part on other grounds*, 369 N.C. 298, 794 S.E.2d 306 (2016) (reasoning that the fact that the witness and her daughter did not receive the threatening letters was "irrelevant"). The indictment's reference to Defendant "telling Darryl Derstine to tell Nicholas Ramos" was mere surplusage, and the variance between that reference and the evidence does not merit reversal. *See Pickens*, 346 N.C. at 645-46, 488 S.E.2d at 172 (holding no fatal variance between "handgun" in evidence versus "shotgun" in indictment, because indictment's averment to a "shotgun" was "not necessary, making it mere surplusage in the indictment").

B. Jury Instruction

Defendant argues that the trial court erred by using the phrase "attempted to deter", which he contends was a deviation from the pattern jury instructions, in its jury instruction for the charge of intimidating a witness. We disagree.

*1. Preservation*

Defendant again failed to object at trial to the jury instructions. However, an error in jury instructions is preserved for appellate review, even without objection,

"when the trial court deviates from an agreed-upon pattern instruction." *State v. Lee*, 370 N.C. 671, 672-73, 811 S.E.2d 563, 564-65 (2018).

### 2. *Standard of Review*

¶ 24 "Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citing *State v. Ligon*, 332 N.C. 224, 241-242, 420 S.E.2d 136, 146-147 (1992); *State v. Levan*, 326 N.C. 155, 164-65, 388 S.E.2d 429, 434 (1990)).

> This Court reviews jury instructions contextually and in its entirety. The charge will be held sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.] . . . [I]t is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (citation omitted).

### 3. *Analysis*

¶ 25 The trial court's proposed jury instruction for the charge of intimidating a witness was essentially the same as the pattern instruction N.C.P.I.—Crim. 230.65. In pertinent part, N.C.P.I.—Crim. 230.65 provides the following:

> The defendant has been charged with [intimidating] [interfering] with a witness.

> For you to find the defendant guilty of this offense, the State must prove four things beyond a reasonable doubt:
>  . . .
> that the defendant [[intimidated] [attempted to intimidate] [interfered with] [attempted to interfere with] [deterred] [attempted to deter] [prevented] [attempted to prevent]] any person who was [summoned] [acting] as a witness in the defendant's case.  Intimidate means to make timid or fearful; inspire or affect with fear; frighten.

N.C. Pattern Jury Instructions, N.C.P.I.—Crim. 230.65.

¶ 26        The trial court did not deviate from the proposed or pattern instruction. Defendant takes issue with the fact that the trial court used the pattern phrase "attempted to deter", which Defendant argues corresponds to a charge of "interfering with" rather than "intimidating" a witness.  However, the trial court specified in its proposal that it would use the phrase "attempting to deter", and "attempted to deter" is one of the phrases provided in N.C.P.I.—Crim. 230.65.  There was no deviation from the agreed-upon instruction.

¶ 27        Although Defendant argues that "intimidating" versus "interfering with" a witness are two different theories of liability with distinct elements, Defendant cites no case law that construes N.C. Gen. Stat. § 14-226 in this way.  On the contrary, *State v. Neely*, 4 N.C. App. 475, 166 S.E.2d 878 (1969), which Defendant cites in support of his argument, considers "attempting to intimidate" a witness, "attempting to . . . threaten" a witness, and "attempting to . . . prevent [a witness from] testifying"

as undistinguished parts of a single offense under N.C. Gen. Stat. § 14-226. 4 N.C. App. at 476, 166 S.E.2d at 879 (stating that "the defendant was attempting to intimidate and threaten this witness and to prevent him from testifying"). Similarly, *State v. Blevins*, 223 N.C. App. 521, 735 S.E.2d 451 (2012), an unpublished opinion which Defendant likewise cites in support of his argument, states that

> The *crime of intimidating a witness* exists when "any person . . . threat[ens], menaces or in any other manner intimidate[s] or attempt[s] to intimidate any person who is summoned or acting as a witness in any of the courts of this State, *or prevent[s] or deter[s], or attempt[s] to prevent or deter* any person . . . acting as such witness from attendance upon such court[.]"

*Id.* at ___, 735 S.E.2d at ___ (emphasis added) (quoting N.C. Gen. Stat. § 14-226 (2011)).

¶ 28    Presuming, *arguendo,* the trial court's use of the phrase "attempted to deter" was an erroneous deviation, Defendant has failed to show that this was likely, in light of the entire charge, to mislead the jury. The jury was informed that "the defendant has been charged with intimidating a witness[,]" and was told that "[i]ntimidating means to make timid or fearful, inspire or affect with fear or frighten[.]" In light of the entire charge, we perceive no reasonable likelihood that the use of the phrase "attempted to deter" (rather than the word "intimidated" or the phrase "attempted to intimidate") misled the jury. It was already informed that the charge involved intimidation and was provided a definition of "intimidating".

C. <u>The Restitution Order</u>

¶ 29    Defendant argues that the State did not present any evidence to support the amount of the trial court's restitution order. We agree.

### 1. *Preservation*

¶ 30    Although Defendant did not object to the restitution award at sentencing, an invalid or incorrect sentence may be appealed as a matter of law. *State v. Mumford*, 364 N.C. 394, 403, 699 S.E.2d 911, 917 (2010) (applying N.C. Gen § 15A-1446(d)(18)).

### 2. *Standard of Review*

¶ 31    We review *de novo* whether competent evidence supports the trial court's restitution award. *State v. Lucas*, 234 N.C. App. 247, 258, 758 S.E.2d 672, 680 (2014).

### 3. *Analysis*

¶ 32    The trial court ordered Defendant to pay restitution in the amount of $23,189.22 to the victim. However, the State failed to present in court any documentation or testimony supporting or detailing the amount of the victim's medical expenses. The State concedes this point on appeal.

¶ 33    When a restitution award lacks a sufficient evidentiary basis, "the proper remedy is to vacate the trial court's restitution order and remand for rehearing on the issue." *State v. Thomas*, 259 N.C. App. 198, 211, 814 S.E.2d 835, 843 (2018) (citation and quotation marks omitted), *disc. review denied*, 371 N.C. 475,

818 S.E.2d 288 (2018). We vacate the restitution order and remand for a rehearing on the issue.

### III. Conclusion

For the foregoing reasons, we discern no error in the denial of the motion to dismiss and in the jury instruction. We vacate the trial court's restitution order and remand for a rehearing on that issue alone.

NO ERROR IN PART; VACATED IN PART, AND REMANDED.

Judges TYSON and CARPENTER concur.