IN THE SUPREME COURT OF NORTH CAROLINA

No. 36PA16

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

JAMES ANTHONY BARNETT, JR.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 784 S.E.2d 188 (2016), finding no error at trial after appeal from judgments entered on 16 July 2014 by Judge Edwin G. Wilson, Jr. in Superior Court, Rockingham County, but reversing, reversing and remanding, and vacating in part and remanding three related orders entered the same day. Heard in the Supreme Court on 10 October 2016.

*Roy Cooper, Attorney General, by Anne M. Middleton, Special Deputy Attorney General, for the State-appellant.*

*Jennifer Harjo, Public Defender, New Hanover County, by Brendan O'Donnell, Assistant Public Defender, for defendant-appellee.*

HUDSON, Justice.

Defendant James Anthony Barnett, Jr. was convicted by a jury on 16 July 2014 of a number of offenses, including attempted second-degree rape. At sentencing, the trial court entered a "Convicted Sex Offender Permanent No Contact Order" under N.C.G.S. § 15A-1340.50, prohibiting defendant from any interaction with the victim. Here we must decide whether the trial court has authority to include in such an order

the names of individuals other than the original victim, and if so, under what circumstances. We conclude that the court does have that authority, if supported by appropriate findings as required by the statute.

The order entered here contains the following language under the final section, entitled "Restrictions": "This order includes the following individuals: [three named individuals who are minor children of the victim]." On appeal the Court of Appeals vacated the no contact order and remanded for the trial court to "remove mention of any individuals other than the victim," concluding that "the trial court did not have authority under the catch-all provision to enter a no contact order specifically including persons who were not 'victims' of the 'sex offense' committed by Defendant." *State v. Barnett*, ___ N.C. App. ___, ___, 784 S.E.2d 188, 200 (2016); *see also* N.C.G.S. § 15A-1340.50(f)(7) (2015). We allowed the State's petition for discretionary review.

We agree with the Court of Appeals that N.C.G.S. § 15A-1340.50 protects the victim of the sex offense, and not third parties, and that the catch-all provision in N.C.G.S. § 15A-1340.50(f)(7) cannot be read to expand the reach of the statute. *Barnett*, ___ N.C. App. at ___, 784 S.E.2d at 199-200. But, because we hold that N.C.G.S. § 15A-1340.50 can authorize protection for the victim from indirect contact by the defendant through the victim's family or friends when appropriate findings are made by the trial court, we reverse in part the decision of the Court of Appeals and remand this case for entry of a new permanent no contact order not inconsistent with this opinion.

The evidence presented at trial revealed that from late January until late April 2013, defendant dated the victim. During the last two months of the relationship, defendant stayed in the victim's apartment with her and her three daughters, ages thirteen years, eleven years, and eleven months.

On or about 22 April 2013, defendant left the apartment to meet with his probation officer. That same day, while defendant was away, the victim communicated with him over the telephone to terminate their relationship. On 22 May 2013, defendant showed up at the victim's apartment to retrieve his clothes while the victim was at home with her youngest child. The victim asked defendant to wait in the living room while she gathered his belongings. Defendant asked the victim for a hug, and the victim obliged. Then defendant asked the victim to engage in sexual intercourse with him. The victim repeatedly refused, asking defendant to leave her apartment.

When defendant refused to leave, the victim entered the bathroom "to sort of kill time." Defendant followed her and stood outside the bathroom door, blocking her way when she attempted to exit the room. Defendant pulled the victim into her children's bedroom, threw her onto the floor and then onto a bed, and began attempting to engage in sexual intercourse with her. During this process, defendant repeatedly struck the victim in the head and face.

The victim stated that before defendant left the apartment, he told her he would kill her if she called the police. Nonetheless, she asked a neighbor to call for

emergency assistance. The responding officer found the victim crying, in a disheveled condition, and with "severe bruises" on her face and body and "a lot of swollen . . . lumps on her head."

After being released from the hospital, the victim began receiving text messages from defendant, stating that he would come back and "finish the job," and that he was "coming back to the neighborhood" to kill her. From 31 May to 4 August 2013, while defendant was incarcerated, he wrote at least eight threatening letters to the victim or one of her daughters. *Barnett*, ___ N.C. App. at ___, 784 S.E.2d at 192. On 31 May 2013, defendant wrote:

> What did I tell you, would happen if you took charges; out on me? You remember, what I told you. And I'ma stand by my word. Because you knew not to press charges or go to the hospital. You knew better then that. . . . I miss you deeply and love you like crazy. You are not just going to walk, away from me this easily. Because before you do so, I will kill you or have you killed.

In a later letter to the victim, defendant reminded the victim of his earlier threats and referred to "order[ing] a hit." Defendant also wrote:

> So I'ma put you below, before you can put me away for X amout of yrs. . . . I'll send my lil СЯIP homies at you and your family. . . . I will orcastrate some shit, from in here behind these walls and make it happen ASAP. If I'ma go back to prison it's going to be for some real serious shit. Not some bullshit or some bullshit lies, that you done told on me. It is going to be for, accessory to 1st degree murder and mastermind 1st degree murder. Not just one body, but 3 more precious bodies. (4 counts 1st Degree murder and 4 counts mastermind 1st Degree Murder) You understand me and feel what I'm getting at?

Additionally, defendant sent a letter to one of the victim's daughters in which he stated that, if the victim failed to "drop[ ]" the charges against him, he would "order some things to happen which means [he] will never, get out of prison again," that he "will never see, the courtroom," and that the same would be true of the victim, who would "be dead, because of [his] orders." Finally, on 4 August 2013, defendant wrote to the victim, "I done told you before, I have people watching your apartment. . . . But just know, if God spares my life and I'm able to get out and walk the streets again one day. I'm coming to get you and my family back."

On 8 July 2013, defendant was indicted in Rockingham County for: (1) attempted second-degree rape, second-degree kidnapping, and assault on a female on 22 May 2013; (2) two counts of deterring an appearance by a witness on 4 and 20 June 2013 in that defendant attempted to prevent the alleged victim from attending court to testify regarding the 22 May events "by threatening to kill her and have her killed if she appeared"; and (3) habitual misdemeanor assault under N.C.G.S. § 14-33.2. A separate undated indictment charged defendant as an habitual felon, listing convictions dated between September 1999 and June 2009, and showed offense dates of 22 May, 4 June, and 20 June 2013. All offenses were later joined for trial, plus a charge of assault inflicting serious injury, also alleged to have occurred on 22 May 2013.

Defendant was tried during the criminal session of Superior Court, Rockingham County that began on 14 July 2014 before Judge Edwin G. Wilson, Jr. Defendant entered into a plea arrangement in which he pleaded guilty to habitual misdemeanor assault based on the prior convictions set out in the indictment. Two days later a jury found defendant guilty of attempted second-degree rape, assault on a female, and both counts of deterring appearance by a witness. Defendant then pleaded guilty to having attained habitual felon status.

On 16 July 2014, the trial court sentenced defendant to a term of 110 to 144 months for attempted second-degree rape, and ordered that he register as a sex offender and enroll in satellite-based monitoring for life upon his release from prison. The trial court also entered a "Convicted Sex Offender Permanent No Contact Order" (using Form AOC-CR-620, Rev. 12/11), which includes the following:

> FINDINGS OF FACT
>
> . . . .
>
> 4. The following grounds exist for the victim to fear any future contact with the defendant:
>
> DUE TO THE AGGRAVATED NATURE OF THE OFFENSE AND THE DEFENDANT'S HISOTRY [sic] OF VIOLENCE AS WELL AS THE DEFENDANT'S PERONAL KNOWLEGED [sic] OF THE VICTIM AND HER FAMILY.
>
> CONCLUSIONS OF LAW
> Based on the foregoing findings, the Court concludes that (*select one*):
> [Checked Box] 1. reasonable grounds exist for the victim to fear any future contact with the defendant.

. . . .

ORDER

[Checked Box] . . . It is hereby Ordered that the defendant is prohibited from having any contact with ____[ ]____ (*name of victim*) during the remainder of the defendant's natural life as specified in the Restrictions below. This no contact order is incorporated into the judgment imposing sentence in this case.

. . . .

RESTRICTIONS

The following restrictions apply under the no contact order entered on above(*check all that apply*):

[Checked Box] 1. The defendant shall not threaten, visit, assault, molest, or otherwise interfere with the victim.

[Checked Box] 2. The defendant shall not follow the victim, including at the victim's workplace.

[Checked Box] 3. The defendant shall not harass the victim.

[Checked Box] 4. The defendant shall not abuse or injure the victim.

[Checked Box] 5. The defendant shall not contact the victim by telephone, written communication, or electronic means.

[Checked Box] 6. The defendant shall refrain from entering or remaining present at the victim's residence, school, place of employment, and (*specify other place(s)*) ____[empty blank]____ at times when the victim is present.

[Checked Box] 7. Additional necessary and appropriate restriction(s):

THIS ORDER INCLUDES THE FOLLOWING INDIVIDUALS:

[three named individuals who are minor children of the victim]

The trial court entered a separate judgment on the consolidated convictions for deterring appearance by a witness, assault on a female, and habitual misdemeanor

assault in which the court sentenced defendant to a second term of 110 to 144 months, to be served consecutively.

Defendant appealed to the Court of Appeals, where he argued, *inter alia*, that the trial court erred in extending the permanent no contact order to the victim's children. *Barnett*, ___ N.C. App. at ___, 784 S.E.2d at 198. In a unanimous opinion filed on 19 January 2016, the Court of Appeals agreed with defendant's argument on that issue, vacated the order because of the language relating to the children, and remanded for entry of a new order. *Id.* at ___, 784 S.E.2d at 200. Specifically, the Court of Appeals concluded that the trial court's authority to enter an order under N.C.G.S. § 15A-1340.50 "is limited to prohibiting actions by the defendant against 'the victim' based on the plain language of the statute." *Id.* at ___, 784 S.E.2d at 200. As a result, the trial court lacked "authority under the catch-all provision to enter a no contact order specifically including persons who were not 'victims' of the 'sex offense' committed by Defendant." *Id.* at ___, 784 S.E.2d at 200. The State filed a petition for discretionary review, which we allowed on 13 April 2016.

The State argues that the Court of Appeals erred in holding that the trial court was without statutory authority to include prohibitions on contact with the victim's minor children as a term of the permanent no contact order. We conclude that the trial court had authority to enter such prohibitions if supported by appropriate findings, and thus reverse that portion of the Court of Appeals' opinion holding otherwise. We agree with the Court of Appeals that N.C.G.S. § 15A-1340.50 protects

the victim of the sex offense, and not third parties, and that the catch-all provision in N.C.G.S. § 15A-1340.50(f)(7) cannot be read to expand the reach of the statute to protect individuals other than the victim. *Id.* at ___, 784 S.E.2d at 199-200. But we also conclude that a trial court may enter a no contact order prohibiting indirect contact with the victim through her children or others who may be specified in the section entitled "Restrictions" under subdivisions (f)(1) through (f)(6), as well as (f)(7) of N.C.G.S. § 15A-1340.50, if supported by appropriate findings. N.C.G.S. § 15A-1340.50 (2015). By "appropriate findings," we mean findings indicating that the defendant's contact with specific individuals would constitute indirect engagement in any of the actions prohibited in subdivisions (f)(1) through (f)(7).

This Court reviews the decision of the Court of Appeals to determine whether the decision contains an error of law. N.C. R. App. P. 16(a); *State v. Mumford*, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010). This case presents a question of statutory interpretation, which is an issue of law. "The intent of the Legislature controls the interpretation of a statute." *State v. Joyner*, 329 N.C. 211, 217, 404 S.E.2d 653, 657 (1991) (quoting *State v. Perry*, 305 N.C. 225, 235, 287 S.E.2d 810, 816 (1982), *overruled by Mumford*, 364 N.C. at 402, 699 S.E.2d at 916). "In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish." *State ex rel. Utils. Comm'n v. Pub. Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 444 (1983) (citation omitted). "When a statute is unambiguous, this Court 'will give effect to the plain meaning of the words without

resorting to judicial construction.'" *State v. Davis*, 364 N.C. 297, 302, 698 S.E.2d 65, 68 (2010) (quoting *State v. Byrd*, 363 N.C. 214, 219, 675 S.E.2d 323, 325 (2009)). "However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment." *Byrd*, 363 N.C. at 219, 675 S.E.2d at 325 (quoting *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006)).

The statute at issue here, N.C.G.S. § 15A-1340.50, reads in pertinent part:

> (a) The following definitions apply in this Article:
> (1) Permanent no contact order.— A permanent injunction that prohibits any contact by a defendant with the victim of the sex offense for which the defendant is convicted. The duration of the injunction is the lifetime of the defendant.
> (2) Sex offense.— Any criminal offense that requires registration under Article 27A of Chapter 14 of the General Statutes.
> (3) Victim.— The person against whom the sex offense was committed.
> . . . .
>
> (e) At the conclusion of the show cause hearing the judge shall enter a finding for or against the defendant. If the judge determines that reasonable grounds exist for the victim to fear any future contact with the defendant, the judge shall issue the permanent no contact order. The judge shall enter written findings of fact and the grounds on which the permanent no contact order is issued. The no contact order shall be incorporated into the judgment imposing the sentence on the defendant for the conviction of the sex offense.
>
> (f) The court may grant one or more of the following forms of relief in a permanent no contact order under this Article:

(1) Order the defendant not to threaten, visit, assault, molest, or otherwise interfere with the victim.
(2) Order the defendant not to follow the victim, including at the victim's workplace.
(3) Order the defendant not to harass the victim.
(4) Order the defendant not to abuse or injure the victim.
(5) Order the defendant not to contact the victim by telephone, written communication, or electronic means.
(6) Order the defendant to refrain from entering or remaining present at the victim's residence, school, place of employment, or other specified places at times when the victim is present.
(7) Order other relief deemed necessary and appropriate by the court.

N.C.G.S. § 15A-1340.50(a), (e), (f).

The paramount purpose of N.C.G.S. § 15A-1340.50 is to protect a victim of a sex offense from further contact, harm, or molestation by his or her assailant. *See id.* § 15A-1340.50 (titled "Permanent no contact order prohibiting future contact by convicted sex offender with crime victim."); Act of July 21, 2009, ch. 380, 2009 N.C. Sess. Laws 721 (captioned in part: "An act to provide that when sentencing a defendant convicted of a sex offense and upon request of the district attorney, the court may enter a permanent no contact order prohibiting any future contact of a convicted sex offender with the crime victim . . . ."); *see also State v. Hunt*, 221 N.C. App. 48, 55, 727 S.E.2d 584, 590 ("[T]he legislative purpose . . . [is] to protect an individual who fears contact with the defendant from being contacted or harmed, either mentally or physically, by the convicted sex offender who purportedly

victimized him or her."), *appeal dismissed and disc. rev. denied*, 366 N.C. 390, 732 S.E.2d 581 (2012).

The statute provides that when "reasonable grounds exist for the victim [of a sex offense] to fear any future contact with the defendant, the judge shall issue [a] permanent no contact order." N.C.G.S. § 15A-1340.50(e). A permanent no contact order is defined as "[a] permanent injunction that prohibits any contact by a defendant with the victim of the sex offense for which the defendant is convicted." *Id.* § 15A-1340.50(a)(1). The "victim" is "[t]he person against whom the sex offense was committed." *Id.* § 15A-1340.50(a)(3). The trial court must "enter written findings of fact and the grounds on which the permanent no contact order is issued," and "[t]he no contact order shall be incorporated into the judgment." *Id.* § 15A-1340.50(e).

In the no contact order the trial court may impose various forms of relief specifically enumerated in the statute, as well as "other relief deemed necessary and appropriate by the court." *Id.* § 15A-1340.50(f). Each of the specifically enumerated forms of relief involves an order to the defendant not to engage in certain conduct towards the victim. *See id.* § 15A-1340.50(f)(1)-(6). The catch-all provision in subdivision (f)(7), however, does not specify whom the "other relief" may protect, and thus, can be viewed as ambiguous. *Id.* § 15A-1340.50(f)(7).

The title of the statute, the definition of "permanent no contact order" in subdivision (a)(1), and the specifically enumerated forms of relief in subdivisions (f)(1) through (f)(6) all unambiguously contemplate protection of the particular victim.

Accordingly, because the purpose of the statute and the intent of the legislature appear to be to protect the particular victim of the sex offense, the catch-all provision in subdivision (f)(7) should similarly be limited to "other relief" for the protection of the victim of the sex offense only. *Cf. State v. Elder*, 368 N.C. 70, 72-73, 773 S.E.2d 51, 53 (2015) (concluding that the catch-all provision in N.C.G.S. § 50B-3(a)(13), which reads "any additional prohibitions or requirements the court deems necessary" and follows a list of twelve other prohibitions or requirements that the judge may impose on a party to a DVPO, "limits the court to ordering a *party* to act or refrain from acting" and "does not authorize the court to order law enforcement, which is not a party to the civil DVPO, to proactively search defendant's person, vehicle, or residence," as the trial court sought to do (emphasis added)).

Thus, we agree with the Court of Appeals that N.C.G.S. § 15A-1340.50 protects the victim of the sex offense, and not third parties, and that the catch-all provision in N.C.G.S. § 15A-1340.50(f)(7) cannot be read to expand the reach of the statute to protect individuals other than the victim of the sex offense. *Barnett*, ___ N.C. App. at ___, 784 S.E.2d at 199-200.

Nonetheless, we also hold that under the statute, the trial court may prohibit a convicted sex offender from engaging in any of these forms of contact *indirectly* with the victim through the victim's family, friends, or acquaintances. Nearly all the enumerated options for relief are prohibitions against actions that can be taken indirectly as well as directly against the victim; the catch-all provision in (f)(7)

-13-

permits additional restrictions if "necessary and appropriate." *See* N.C.G.S. § 15A-1340.50(f). Accordingly, to the extent that a defendant's contact with other individuals constitutes indirect engagement in any of the actions prohibited in subdivisions (f)(1) through (f)(7), such indirect contact is inherently within the scope of the conduct that the trial court is authorized to prohibit under the statute. To specifically prohibit such conduct, however, the trial court must make appropriate findings.

Additionally, because the catch-all provision in subdivision (f)(7) allows the trial court to "[o]rder other relief deemed necessary and appropriate," it is within the scope of the trial court's authority to specifically list people whom the defendant may not contact when the trial court has concluded that such contact would constitute a violation of the specific restrictions imposed upon the defendant under subdivisions (f)(1) through (f)(6). Thus, the Court of Appeals erred in concluding that "the trial court did not have authority under the catch-all provision to enter a no contact order specifically including persons who were not 'victims' of the 'sex offense' committed by Defendant." *Barnett*, ___ N.C. App. at ___, 784 S.E.2d at 200.

Here both parties agree that N.C.G.S. § 15A-1340.50 authorizes a permanent no contact order for the protection of the victim only, and not for third parties. The parties differ, however, with respect to how to interpret the trial court's no contact order. The State argues that to be consistent with the statute, we must interpret the order to mean that the children were listed by the trial court to protect the victim,

rather than the children themselves. Defendant, on the other hand, interprets the no contact order as protecting the children directly from any and all contact by him to the same extent as the victim, regardless of whether the contact is related to the victim. Defendant argues that his interpretation conflicts with the statute because the statute does not authorize protection for third parties. This disparity arises here because the trial court failed to make appropriate findings in support of the restrictions on defendant's indirect contact with the victim through third parties.

In essentially adopting defendant's interpretation of the order, the Court of Appeals erred. We do not agree that inclusion of the children's names under the (f)(7) catch-all provision comprehensively extends the protections of the entire order to the children too, as if they were the victims of the original assault. As discussed earlier, the trial court is not authorized to prohibit contact with third parties for the protection of those individuals; however, the trial court can prohibit indirect contact with the victim through specifically identified third parties if such a prohibition is supported by appropriate findings in the no contact order.

Accordingly, we reverse the decision by the Court of Appeals on the issue upon which we allowed review, and remand this case to that court for further remand to the trial court for entry of a permanent no contact order containing appropriate findings to support any "Restrictions" on indirect contact with the victim through third parties. The other issues addressed by the Court of Appeals are not before this Court, and the Court of Appeals' decision on those matters remains undisturbed.

REVERSED IN PART AND REMANDED.