IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-497

 No. COA20-618

 Filed 21 September 2021

 Washington County, Nos. 19 CRS 77, 282, 18 CRS 50617

 STATE OF NORTH CAROLINA

 v.

 WILLIS R. CLAGON, Defendant.

 Appeal by Defendant from judgments entered 19 November 2019 by Judge

 Walter H. Godwin, Jr., in Washington County Superior Court. Heard in the Court of

 Appeals 25 August 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Creecy
 Johnson, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Wyatt
 Orsbon, for Defendant.

 GRIFFIN, Judge.

¶1 Willis R. Clagon (“Defendant”) appeals from two judgments entered upon a

 jury verdict for (1) assault with a deadly weapon inflicting serious injury and (2)

 intimidating a witness.1 Defendant argues that (1) there was a fatal variance

 between the State’s proof and its charge of intimidating a witness; (2) the trial court

 1 Defendant also filed a petition for writ of certiorari to appeal an order finding him in

 criminal contempt. We deny the petition.
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 erred by using the phrase “attempted to deter” in its jury instruction for the charge

 of intimidating a witness; and (3) the trial court’s restitution order was unsupported

 by the State’s evidence. We discern no error in the first two issues. We vacate and

 remand on the issue of restitution.

 I. Factual and Procedural Background

 A. Indictment

¶2 On 8 April 2019, Defendant was indicted for (1) assault with a deadly weapon

 inflicting serious injury (“AWDWISI”) and (2) intimidating a witness. The indictment

 for intimidating a witness stated, in pertinent part, that “[t]he intimidation consisted

 of [Defendant] telling Darryl Derstine to tell Nicholas Ramos that he would have

 Nicholas Ramos deported if he testified against [] Defendant and was for the purpose

 of keeping Nicholas Ramos from testifying against [Defendant].”

 B. State’s Evidence

¶3 Defendant was tried by jury in Washington County Superior Court from 18 to

 19 November 2019. The State’s evidence tended to show the following:

¶4 Larry Brooks and Defendant were employed at Crossties Plus as of 29

 November 2018. That day, Mr. Brooks and Defendant had an “altercation.” At first,

 they only exchanged words, but then Defendant pushed Mr. Brooks, and Mr. Brooks

 swung at Defendant in response, without hitting him. Defendant walked away, and

 Mr. Brooks went back to work. A few minutes later, Defendant returned with a
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 machete, which he swung at Mr. Brooks multiple times. The machete blade hit Mr.

 Brooks’ shoulder and left wrist.

¶5 Darryl Derstine drove Mr. Brooks to the hospital. Mr. Brooks spent about two

 hours at the hospital, and then approximately a day and a half at another hospital

 where he received surgery to repair his severed ligaments. He spent around two

 months in physical therapy after the incident. He had not regained full use of his left

 hand when the case was called for trial. Mr. Brooks did not testify as to the monetary

 amount of his medical expenses, and no evidence in the Record shows the amount.

¶6 Nicholas Ramos, another Crossties Plus employee, was working nearby during

 the alleged assault. Mr. Derstine testified that, “sometime within the next couple of

 months” after the incident, he had a phone conversation with Defendant concerning

 Mr. Ramos. Mr. Derstine testified that in the phone call, Defendant

 started talking about that he had told his lawyer . . . that
 Nick [Ramos] was illegal.
 ...
 [Defendant] said he mentioned ICE, like immigration, and
 implied that they would -- might be coming around and
 then . . . he said, “I know Nick has a family here, and that's
 too bad.” He said, “I have a family here too, and I’m going
 to look out for my interest first. I will not have him testify
 against me.”

 [PROSECUTOR:] Did he . . . say anything else about
 having Nick deported?

 [MR. DERSTINE:] He never actually said, “I will have Nick
 deported.” He contextualized the conversation in that
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 context of immigration in that . . . Nick isn’t supposed
 to be here in his mind, and then he said, “It’s too bad
 about his family, but I have a family too. I’m going to
 look out for my interest first. I will not have him testify
 against me.”

¶7 Similarly, a Crossties Plus employee, James Strite, testified that he “knew

 [that Defendant] said there is an employee here that is, quote, illegal, and I won’t

 have him testifying against me.”

¶8 Investigator Charles Arnold, who had responded to the call about the incident,

 testified that he

 had went [sic] back to . . . the sawmill on January 29th and
 spoke with Mr. Derstine in reference to [Defendant] calling
 up there several times from jail -- or calling after he was
 released from jail and saying that he knew -- he knew Nick
 [Ramos] was here illegally and that it would be a shame if,
 you know, ICE was called and he was -- you know I took it
 as be deported.

 I asked Mr. Derstine if . . . Nick would be willing to talk to
 me, and he said, “Nick is very scared of [Defendant].”
 ...
 It wasn’t for a while later that I received a message that
 Nick would talk.

¶9 During cross-examination, Investigator Arnold testified the

 following:

 [DEFENSE COUNSEL:] And [Nicholas Ramos’s]
 cooperation in this case was not deterred in any way that
 you can tell.

 [INVESTIGATOR ARNOLD:] No, ma’am.
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 [DEFENSE COUNSEL:] And to your knowledge
 [Defendant], once he turned himself in, never called ICE or
 any other deportation agency --

 [INVESTIGATOR ARNOLD:] No, ma’am.
 ...
 [DEFENSE COUNSEL:] No letters were seized from
 [Defendant’s] jail cell where he said ICE is going to be here,
 and to your knowledge no ICE agent is in this courtroom.

 [INVESTIGATOR ARNOLD:] No, ma’am.

¶ 10 Mr. Ramos testified that Mr. Derstine had not told him “about a phone call he

 had with [Defendant.]” Additionally, Mr. Ramos denied that he was, “for lack of a

 better word[,] . . . scared to come here today and have to testify[.]”

 C. Jury Instructions

¶ 11 For the charge of intimidating a witness, the trial court proposed giving jury

 instructions of

 intimidating a witness and the paragraphs within that the
 defendant intimidated by attempting to deter any person
 who was summoned or who was acting as a witness in the
 defendant’s case, intimidating means to make timid,
 fearful, or inspire or affect with fear or frighten and that
 the threat consisted of threatening to have authorities to
 deport the witness and then the concluding instructions.

 The trial court gave the following jury instructions for the charge of intimidating a

 witness:

 Now the defendant has been charged with intimidating a
 witness. For you to find the defendant guilty of this
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 offense the State must prove four things beyond a
 reasonable doubt: First, that a person was acting as a
 witness in a -- in a court of this state; second, that the
 defendant attempted to deter any person who was acting
 as a witness in the defendant’s case. Intimidating means
 to make timid or fearful, inspire or affect with fear or
 frighten; third, that the defendant acted intentionally; and,
 fourth, that the defendant did so by threatening to have the
 authorities deport the witness.

 So if you find from the evidence beyond a reasonable
 doubt that on or about the alleged date a person was acting
 as a witness in the defendant’s case in a court of this
 state and that the defendant intentionally attempted to
 deter the witness by threatening to have the authorities
 deport the witness it would be your duty to return a verdict
 of guilty; however, if you do not so find or if you have a
 reasonable doubt to one or more of these things, it would
 be your duty to return a verdict of not guilty.

 The parties did not object to the court’s proposed jury instruction for the charge of

 intimidating a witness, either before or after the instructions were given.

¶ 12 During deliberations, the jury asked, “What are the criteria for finding an

 intimidating a witness verdict?” The trial court brought the jury back in the

 courtroom and repeated essentially the same instructions for the charge of

 intimidating a witness.

 D. Motions to Dismiss

¶ 13 Defendant moved to dismiss both charges at the close of the State’s evidence

 and at the close of all the evidence. The trial court denied Defendant’s motions to

 dismiss.
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 E. Sentencing and Appeal

¶ 14 The jury found Defendant guilty of both charges. The trial court sentenced

 Defendant to 45-66 months for the AWDWISI conviction and 22-36 months for the

 intimidating a witness conviction. At the State’s request, the trial court also awarded

 $23,189.22 in victim restitution. Defendant timely appealed.

 II. Analysis

¶ 15 Defendant argues that (1) there was a fatal variance between the State’s proof

 and its charge of intimidating a witness; (2) the trial court erred by using the phrase

 “attempted to deter” in its jury instruction for the charge of intimidating a witness;

 and (3) the trial court’s restitution order was unsupported by the State’s evidence.

 We disagree that the variance was fatal and that the jury instructions deviated from

 the agreed-upon pattern instructions. We agree, and the State concedes, that the

 trial court’s restitution order was unsupported by evidence.

 A. No Fatal Variance

¶ 16 Defendant argues that there was a fatal variance between the State’s proof and

 its charge of intimidating a witness. Although there was a variance between the

 evidence and the indictment, the variance was not fatal.

 1. Preservation

¶ 17 Defendant’s motion to dismiss preserved his variance argument for appellate

 review. Previously, this Court has held that “[t]o preserve the issue of a fatal variance
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 for review, a defendant must state at trial that a fatal variance is the basis for the

 motion to dismiss.” State v. Redman, 224 N.C. App. 363, 367-68, 736 S.E.2d 545, 549

 (2012) (citing State v. Curry, 203 N.C. App. 375, 384, 692 S.E.2d 129, 137, appeal

 dismissed and disc. review denied, 364 N.C. 437, 702 S.E.2d 496 (2010)). Defendant’s

 motions to dismiss did not specifically articulate a fatal variance argument; the

 motions were based generally on alleged insufficiencies of evidence. However, our

 Supreme Court recently clarified that “merely moving to dismiss at the proper time

 under Rule 10(a)(3) preserves all issues related to the sufficiency of the evidence for

 appellate review.” State v. Golder, 374 N.C. 238, 249, 839 S.E.2d 782, 790 (2020)

 (emphasis in original). “[A] variance-based challenge is, essentially, a contention that

 the evidence is insufficient to support a conviction.” State v. Gayton-Barbosa, 197

 N.C. App. 129, 134, 676 S.E.2d 586, 590 (2009). In accordance with Golder, we hold

 that the issue was preserved. 374 N.C. at 249, 839 S.E.2d at 790.

 2. Standard of Review

¶ 18 We review de novo the issue of a fatal variance. State v. Cheeks, 267 N.C. App.

 579, 612, 833 S.E.2d 660, 681 (2019), aff’d, 377 N.C. 528, 858 S.E.2d 566 (2021).

 3. Analysis

¶ 19 “A variance between the criminal offense charged and the offense established

 by the evidence is in essence a failure of the State to establish the offense charged.”

 State v. Waddell, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971). For a variance to
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 require dismissal, “the defendant must show a fatal variance between the offense

 charged and the proof as to ‘[t]he gist of the offense.’ This means that the defendant

 must show a variance regarding an essential element of the offense.” State v. Pickens,

 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997) (quoting Waddell, 279 N.C. at 445, 183

 S.E.2d at 646) (citing State v. Williams, 295 N.C. 655, 663, 249 S.E.2d 709, 715

 (1978)). “The purpose for prohibiting a variance between allegations contained in an

 indictment and evidence established at trial is to enable the defendant to prepare a

 defense against the crime with which the defendant is charged and to protect the

 defendant from another prosecution for the same incident.” State v. Taylor, 203 N.C.

 App. 448, 455-56, 691 S.E.2d 755, 762 (2010) (citation omitted).

¶ 20 Here, there was a variance between the indictment and the State’s evidence

 for the charge of intimidating a witness. The indictment stated that “[t]he

 intimidation consisted of [Defendant] telling Darryl Derstine to tell Nicholas Ramos

 that he would have Nicholas Ramos deported if he testified against the Defendant[.]”

 No evidence tended to show Defendant expressly told Darryl Derstine to convey the

 message to Nicholas Ramos. Evidence tended to show Nicholas Ramos did not

 actually receive the message, i.e., Nicholas Ramos testified that Darryl Derstine did

 not tell him “about a phone call he had with [Defendant.]”

¶ 21 However, the variance here was not fatal because it did not relate to the “the

 gist” of the offense. “’The gist’ of the offense of intimidating a witness is ‘the
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 obstruction of justice.’” State v. Neely, 4 N.C. App. 475, 476, 166 S.E.2d 878, 879

 (1969). Whether a witness actually receives the threatening communication in

 question is “irrelevant” to the crime of intimidating a witness. State v. Barnett, 245

 N.C. App. 101, 108, 784 S.E.2d 188, 193-94, rev’d in part on other grounds, 369 N.C.

 298, 794 S.E.2d 306 (2016) (reasoning that the fact that the witness and her daughter

 did not receive the threatening letters was “irrelevant”). The indictment’s reference

 to Defendant “telling Darryl Derstine to tell Nicholas Ramos” was mere surplusage,

 and the variance between that reference and the evidence does not merit reversal.

 See Pickens, 346 N.C. at 645-46, 488 S.E.2d at 172 (holding no fatal variance between

 “handgun” in evidence versus “shotgun” in indictment, because indictment’s

 averment to a “shotgun” was “not necessary, making it mere surplusage in the

 indictment”).

 B. Jury Instruction

¶ 22 Defendant argues that the trial court erred by using the phrase “attempted to

 deter”, which he contends was a deviation from the pattern jury instructions, in its

 jury instruction for the charge of intimidating a witness. We disagree.

 1. Preservation

¶ 23 Defendant again failed to object at trial to the jury instructions. However, an

 error in jury instructions is preserved for appellate review, even without objection,
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 “when the trial court deviates from an agreed-upon pattern instruction.” State v. Lee,

 370 N.C. 671, 672-73, 811 S.E.2d 563, 564-65 (2018).

 2. Standard of Review

¶ 24 “Assignments of error challenging the trial court’s decisions regarding jury

 instructions are reviewed de novo by this Court.” State v. Osorio, 196 N.C. App. 458,

 466, 675 S.E.2d 144, 149 (2009) (citing State v. Ligon, 332 N.C. 224, 241-242, 420

 S.E.2d 136, 146-147 (1992); State v. Levan, 326 N.C. 155, 164-65, 388 S.E.2d 429, 434

 (1990)).

 This Court reviews jury instructions contextually and in its
 entirety. The charge will be held sufficient if it presents
 the law of the case in such manner as to leave no
 reasonable cause to believe the jury was misled or
 misinformed[.] . . . [I]t is not enough for the appealing
 party to show that error occurred in the jury instructions;
 rather, it must be demonstrated that such error was likely,
 in light of the entire charge, to mislead the jury.

 State v. Blizzard, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (citation

 omitted).

 3. Analysis

¶ 25 The trial court’s proposed jury instruction for the charge of intimidating a

 witness was essentially the same as the pattern instruction N.C.P.I.—Crim. 230.65.

 In pertinent part, N.C.P.I.—Crim. 230.65 provides the following:

 The defendant has been charged with [intimidating]
 [interfering] with a witness.
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 For you to find the defendant guilty of this offense, the
 State must prove four things beyond a reasonable doubt:
 ...
 that the defendant [[intimidated] [attempted to intimidate]
 [interfered with] [attempted to interfere with] [deterred]
 [attempted to deter] [prevented] [attempted to prevent]]
 any person who was [summoned] [acting] as a witness in
 the defendant’s case. Intimidate means to make timid or
 fearful; inspire or affect with fear; frighten.

 N.C. Pattern Jury Instructions, N.C.P.I.—Crim. 230.65.

¶ 26 The trial court did not deviate from the proposed or pattern instruction.

 Defendant takes issue with the fact that the trial court used the pattern phrase

 “attempted to deter”, which Defendant argues corresponds to a charge of “interfering

 with” rather than “intimidating” a witness. However, the trial court specified in its

 proposal that it would use the phrase “attempting to deter”, and “attempted to deter”

 is one of the phrases provided in N.C.P.I.—Crim. 230.65. There was no deviation

 from the agreed-upon instruction.

¶ 27 Although Defendant argues that “intimidating” versus “interfering with” a

 witness are two different theories of liability with distinct elements, Defendant cites

 no case law that construes N.C. Gen. Stat. § 14-226 in this way. On the contrary,

 State v. Neely, 4 N.C. App. 475, 166 S.E.2d 878 (1969), which Defendant cites in

 support of his argument, considers “attempting to intimidate” a witness, “attempting

 to . . . threaten” a witness, and “attempting to . . . prevent [a witness from] testifying”
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 as undistinguished parts of a single offense under N.C. Gen. Stat. § 14-226. 4 N.C.

 App. at 476, 166 S.E.2d at 879 (stating that “the defendant was attempting to

 intimidate and threaten this witness and to prevent him from testifying”). Similarly,

 State v. Blevins, 223 N.C. App. 521, 735 S.E.2d 451 (2012), an unpublished opinion

 which Defendant likewise cites in support of his argument, states that

 The crime of intimidating a witness exists when “any
 person . . . threat[ens], menaces or in any other manner
 intimidate[s] or attempt[s] to intimidate any person who is
 summoned or acting as a witness in any of the courts of
 this State, or prevent[s] or deter[s], or attempt[s] to prevent
 or deter any person . . . acting as such witness from
 attendance upon such court[.]”

 Id. at ___, 735 S.E.2d at ___ (emphasis added) (quoting N.C. Gen. Stat. § 14-226

 (2011)).

¶ 28 Presuming, arguendo, the trial court’s use of the phrase “attempted to deter”

 was an erroneous deviation, Defendant has failed to show that this was likely, in light

 of the entire charge, to mislead the jury. The jury was informed that “the defendant

 has been charged with intimidating a witness[,]” and was told that “[i]ntimidating

 means to make timid or fearful, inspire or affect with fear or frighten[.]” In light of

 the entire charge, we perceive no reasonable likelihood that the use of the phrase

 “attempted to deter” (rather than the word “intimidated” or the phrase “attempted to

 intimidate”) misled the jury. It was already informed that the charge involved

 intimidation and was provided a definition of “intimidating”.
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 C. The Restitution Order

¶ 29 Defendant argues that the State did not present any evidence to support the

 amount of the trial court’s restitution order. We agree.

 1. Preservation

¶ 30 Although Defendant did not object to the restitution award at sentencing, an

 invalid or incorrect sentence may be appealed as a matter of law. State v. Mumford,

 364 N.C. 394, 403, 699 S.E.2d 911, 917 (2010) (applying N.C. Gen § 15A-1446(d)(18)).

 2. Standard of Review

¶ 31 We review de novo whether competent evidence supports the trial court’s

 restitution award. State v. Lucas, 234 N.C. App. 247, 258, 758 S.E.2d 672, 680 (2014).

 3. Analysis

¶ 32 The trial court ordered Defendant to pay restitution in the amount of

 $23,189.22 to the victim. However, the State failed to present in court any

 documentation or testimony supporting or detailing the amount of the victim’s

 medical expenses. The State concedes this point on appeal.

¶ 33 When a restitution award lacks a sufficient evidentiary basis, “the proper

 remedy is to vacate the trial court’s restitution order and remand for

 rehearing on the issue.” State v. Thomas, 259 N.C. App. 198, 211, 814 S.E.2d 835,

 843 (2018) (citation and quotation marks omitted), disc. review denied, 371 N.C. 475,
 STATE V. CLAGON

 2021-NCCOA-497

 Opinion of the Court

 818 S.E.2d 288 (2018). We vacate the restitution order and remand for a rehearing

 on the issue.

 III. Conclusion

¶ 34 For the foregoing reasons, we discern no error in the denial of the motion to

 dismiss and in the jury instruction. We vacate the trial court’s restitution order and

 remand for a rehearing on that issue alone.

 NO ERROR IN PART; VACATED IN PART, AND REMANDED.

 Judges TYSON and CARPENTER concur.